1  JESSICA ESPINOSA (SBN 275339)
   EMILY THENARD (SBN 264619)
2  SAG-AFTRA
   5757 Wilshire Boulevard, 7th Floor
3  Los Angeles, California 90036-3600
   Telephone:  (323) 634-8288
4  Facsimile:   (323) 549-6624
   Jessica.Espinosa@sagaftra.org
5
6  Attorney for Petitioner
   Screen Actors Guild - American Federation
7  of Television and Radio Artists
8
9            UNITED STATES DISTRICT COURT
10           CENTRAL DISTRICT OF CALIFORNIA
11  SCREEN ACTORS GUILD-          Case No. 15-9443
    AMERICAN FEDERATION OF
12  TELEVISION AND RADIO          NOTICE OF MOTION AND
    ARTISTS, a non-profit corporation, as   MOTION FOR ORDER
13  successor-in-interest to SCREEN   CONFIRMING ARBITRATION
    ACTORS GUILD, INC., on behalf of   AWARD AND FOR ENTRY OF
14  Affected Performers,           JUDGMENT IN CONFORMITY
                                   THEREWITH; MEMORANDUM OF
15            Petitioner,          POINTS AND AUTHORITIES; AND
                                   DECLARATION OF JESSICA
16  v.                             ESPINOSA IN SUPPORT THEREOF
17  BROKEN THE MOTION PICTURE,     Date:
    LLC,                           Time:
18            Respondent.          Place:
                                   Judge:
19
20
21              NOTICE OF MOTION AND MOTION
22  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:
23       PLEASE TAKE NOTICE that on _____,
24  2016, at _____ a.m./p.m., or as soon as this matter may be heard, petitioner
25  Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-
26  AFTRA" or "Union"), as successor-in-interest to Screen Actors Guild, Inc., will
    move, and hereby does move, the United States District Court, located in
27
28  Courtroom _____ at _____, Los Angeles,

California, for an Order that:

    1.    Confirms the Arbitration Award in favor of Union and against Respondent, Broken the Motion Picture, LLC ("Respondent"), Union Case No. TM 4954, dated December 8, 2011("Arbitration Award"), in all respects;

    2.    Enters judgment in conformity therewith;

    3.    Awards Union attorney's fees and costs;

    4.    Awards such other and further relief as the Court deems just and proper.

This motion is made pursuant to a collective bargaining agreement by which Union obtained the Arbitration Award against Respondent and which expressly provides that the Arbitration Award may be confirmed by the present Court.

This Court's jurisdiction arises under section 301(a) of the Labor Management Relations Act of 1947 (29 USC § 185(a)), as amended, which grants the District Court original jurisdiction over actions relating to violations of collective bargaining agreements between an employer and a labor organization in an industry affecting interstate commerce, without regard to the amount in controversy or the citizenship of the parties.

Venue is proper in the Central District of California because the Arbitration Award was issued in this district.

This motion is based upon this Notice of Motion and Motion as well as the attached Memorandum of Points and Authorities, Declaration of Jessica Espinosa, all pleadings and papers on file, and upon such further oral or documentary evidence that may be presented at the time of hearing.

//
//
//
//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pursuant to Local Rule 7-3, Union attempted to meet and confer with Respondent on November 25, 2015 and sent a Meet and Confer Letter on November 30, 2015. Respondent has not responded. Union informed Respondent via the Meet and Confer Letter that the Union would file the present motion.

Dated:  December 7, 2015              Respectfully Submitted,

SCREEN ACTORS GUILD-
AMERICAN FEDERATION OF
TELEVISION AND RADIO ARTISTS


By:            /s/
JESSICA ESPINOSA
Attorney for Petitioner

1
2
## MEMORANDUM OF POINTS AND AUTHORITIES
3
4      Petitioner Screen Actors Guild-American Federation of Television and Radio
5   Artists ("SAG-AFTRA" or "Union"), as successor-in-interest to Screen Actors
6   Guild, Inc. ("SAG"), respectfully submits the following Points and Authorities in
7   support of its motion to confirm an arbitration award and enter a corresponding
8   judgment.
9                        ## I.   STATEMENT OF FACTS
10
11   A.      The Parties and Underlying Dispute
12          Union is the successor-in-interest to SAG and is a union that represents
13   approximately 160,000 media artists who work in motion pictures, television,
14   radio, the internet, and other media formats.  (Declaration of Jessica Espinosa
15   ("Espinosa Decl."), ¶ 3). Respondent Broken the Motion Picture, LLC
16   ("Respondent" or "Producer") executed a Screen Actors Guild Letter Agreement
17   for Low-Budget Theatrical Pictures ("Low-Budget Agreement") dated July 06,
18   2005. (Espinosa Decl., ¶ 4, Exhibit A)[1].  Respondent also executed a Screen Actors
19   Guild Theatrical Adherence Letter ("Adherence Letter") dated July 06, 2005
20   agreeing to be bound by the Screen Actors Guild Codified Basic Agreement of
21   1995 for Independent Producers, the 1998 Memorandum of Agreement, the 2001
22   Memorandum of Agreement, the 2001 Screen Actors Guild Extension Agreement
23   (collectively "CBA") (Espinosa Decl., ¶ 5, Exhibit B).   On or about October 20
24   2005, Respondent also executed a Security Agreement. (Espinosa Decl., ¶ 6,
25   Exhibit C).
26          During the term of the CBA, Respondent produced the motion picture
27
28   ---
[1] All referenced exhibits throughout the memorandum of points and authorities are expressly incorporated herein as if set forth in full.

MEMO OF POINTS AUTHORITIES IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRATION AWARD AND FOR ENTRY OF JUDGMENT

entitled, *"Broken"* a/k/a *"Mel's Diner"* (the "Picture").  (Espinosa Decl., ¶ 7).

Among other things, the Low-Budget Agreement, Adherence Letter, and Security Agreement bind Respondent to the terms and conditions of a collective bargaining agreement: Screen Actors Guild Codified Basic Agreement of 1995 for Independent Producers, the 1998 Memorandum of Agreement, the 2001 Memorandum of Agreement, the 2001 Screen Actors Guild Extension Agreement (collectively "CBA").  (Espinosa Decl., ¶ 8).  A true and correct copy of the relevant portions of the CBA are attached to the Declaration of Jessica Espinosa as Exhibit D. [2]

Pursuant to the terms of the Low Budget Agreement and the CBA Respondent produced the Picture using Union actors or other performers covered by said agreement (collectively "Performers").  (Espinosa Decl., ¶ 9).

Respondent distributed the Picture on Videocassette/DVD, but failed to make required reports or pay residuals as required by Sections 5 and 5.2 of the CBA. (Espinosa Decl., ¶¶ 10-11, 13).  Pension and health contributions also became due to performers under Section 11(B) of the Low Budget Agreement and Section 34 of the CBA. (Espinosa Decl., ¶12).

As Respondent failed or refused to pay the residuals due to Performers, late payment liquidated damages ("LPLDs") also became due pursuant to Section 31.B the CBA.  (Espinosa Decl., ¶ 14, Exhibit D).

B.     Union Obtains Stipulated Arbitration Award Against Producer

On or about July 17, 2008, pursuant to Section 9.E, of the CBA, Union served a statement of Claim and Request for Conciliation on Respondent for Delinquent Residuals and Reporting. (Espinosa Decl., ¶ 15, Exhibit E). Subsequently, on or about July 17, 2009, pursuant to Section 9.E(3), of the CBA,

---

[2] As the CBA is 617 pages in length, only the Table of Contents and relevant portions of the document have been attached.

MEMO OF POINTS AUTHORITIES IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRATION AWARD AND FOR ENTRY OF JUDGMENT

the Union served a Statement of Claim and Demand for Arbitration ("Demand") on Respondent for failure to pay residual compensation, pension and health contributions, and LPLDs due.  (Espinosa Decl., ¶ 16, <u>Exhibit F</u>).

Said statements of claim and demands for arbitration were served in accordance with the notice provision, Sections 9.E(3) and 42 of the CBA. (Espinosa Decl., ¶ 17). Union unilaterally selected Arbitrator Michael D. Rappaport to preside over the arbitration pursuant to Section 9 of the CBA, after Respondent provided no response to the Demand.   (Espinosa Decl., ¶ 18, <u>Exhibit G</u>).

An arbitration hearing was held on December 8, 2011. Respondent did not appear at the hearing. Consequently, Arbitrator Michael D. Rappaport issued an arbitration award ("Arbitration Award") on December 8, 2011, in favor of Union and against Respondent.  (Espinosa Decl., ¶ 19).  A true and correct copy of the Arbitration Award is attached to the Declaration of Jessica Espinosa as <u>Exhibit H</u>. The Arbitration Award provides the following relief:

"Broken the Movie [sic] Picture, LLC is hereby ordered to pay to Screen Actors Guild, Inc. for ratable distribution to the performers appearing in the Picture residuals, late payment liquidated damages ("LPLD's"), pension and health contributions ("P&H"), and an estimate of employer-side taxes and payroll house expenses as follows:  Residuals: $47,262.04; P&H: $6,467.96; LPLD's: $22, 157.48; Taxes/Expenses (17.95%): $12,460.80; **Total: $75,887.48**." (Espinosa Decl., ¶ 19-20, <u>Exhibit H</u>).

Despite Union's demand, Respondent has failed and continues to fail to pay Union the total amount of **<u>$75,887.48</u>** as required by the Arbitration Award and to otherwise comply with the Arbitration Award.  (Espinosa Decl., ¶¶ 21-22).

//

//

C.   <u>Union Presently Seeks Confirmation of the Arbitration Award, Entry of</u>

<u>Judgment, and Attorney's Fees and Costs</u>

1.      Union hereby seeks an order from this Court confirming the Arbitration Award. Union also requests that judgment be entered in conformity with the Arbitration Award and include an additional award of attorney's fees and costs.  Pursuant to Local Rule 7-3, on November 25, 2015, Union attempted to contact Producer via the last known telephone number provided to the Union. The telephone number was out of service and another business was operating from that number. (Espinosa Decl., ¶ 24). Union sent meet and confer letter on November 30, 2015, stating that Union would proceed to confirm the Arbitration Award as a judgment. (Espinosa Decl., ¶ 25, <u>Exhibit I</u>).

## II.    <u>LAW AND ARGUMENT</u>

A.      <u>This Court Is Empowered To Confirm the Arbitration Award.</u>

The District Courts are empowered to enforce arbitration awards issued in accordance with a collective bargaining agreement.  *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 597, 80 S.Ct. 1358, 4 L.Ed. 2d 1424 (1960).  The Arbitration Award in favor of Union was awarded pursuant to the Low-Budget Agreement and a collective bargaining agreement, the Screen Actors Guild Codified Basic Agreement of 1995 for Independent Producers, the 1998 Memorandum of Agreement, the 2001 Memorandum of Agreement, the 2001 Screen Actors Guild Extension Agreement, and the 2005 Memorandum of Agreement (collectively "CBA").  (Espinosa Decl., ¶ 8, <u>Exh. D</u>). Section 9.G of the CBA provides that this Award may be confirmed in federal court.  (Espinosa Decl., ¶ 8, <u>Exh. D</u>.)  Accordingly, this Court is empowered to confirm and enforce the Award.

//

//

B.     An Arbitration Award Must Be Confirmed If It Draws Its Essence From the Collective Bargaining Agreement.

Under the *United Steelworkers* trilogy of cases, the Court will not review the substantive merit of an arbitration award made in accordance with a collective bargaining agreement.  *See United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d. 1409 (1960); *United Steelworkers v. Enterprise Wheel and Car Co.*, supra.  Instead, the Court will defer to the arbitrator's legal and factual determinations.  *American Postal Workers' Union AFL-CIO v. United States Postal Service*, 682 F.2d 1280, 1284 (9th Cir. 1982), *cert. denied*, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983).  "[J]udicial review of an arbitration award [Under Section 301] is both limited and highly deferential […] the court may not review the merits, but must ask only whether the grievance is governed by the contract and whether the parties agreed to arbitrate the dispute." *Sheet Metal Workers' Int'l Ass'n Local No. 359 v. Madison Indus., Inc., of Ariz.*, 84 F.3d 1186, 1190 (9th Cir. 1996). In this case, the Union satisfies the requirements for the enforcement of the arbitration award.

1.     The Parties Agreed to Arbitrate the Underlying Grievance

Respondent agreed to be bound to the CBA. Respondent signed a Low Budget Agreement on July 6, 2005, and an Adherence Letter on July 6, 2005 binding Respondent to the CBA. (Espinosa Decl. ¶¶ 4-5, Exh. A; Exh. B).  By signing the Low Budget Agreement, Respondent explicitly agreed to abide by all the terms of the CBA:

> "Acceptance as Signatory Producer. Upon signing this Agreement and its acceptance by the Board of Directors of the Guild, you will be signatory to the current Basic Agreement" (Espinosa Decl.,¶ 4, Exh. A, p. 1).

The Theatrical Adherence Letter similarly states:

"The undersigned Producer hereby acknowledges receipt of the Screen Actors Guild Codified Basic Agreement of 1995 for Independent Producers, the 1998 Memorandum of Agreement, the 2001 Memorandum of Agreement and the 2001 Acreen actors Guild Extension Agreement[…] which sets forth the terms and working conditions for performers and background actors[…] by executing this letter, the undersigned Producer and Screen Actors Guild […] shall be deemed to have executed said Agreement." (Espinosa Decl., ¶ 5, Exh.B, p. 1).

>    2.    The CBA Contains An Explicit Agreement to Arbitrate The Underlying Grievance

Section 12(B) of the Low Budget Agreement states: "It is expressly agreed that all disputes hereunder shall be subject to arbitration in accordance with Section 9 under the General Provisions of the current basic agreement." (Espinosa Decl., ¶ 4, Exh. A, p. 8).

Section 9.C(1) of the CBA specifically states that disputes regarding compensation of performers, and all other disputes arising under the applicable terms of the collective bargaining agreement are arbitrable:

9. ARBITRATION
Disputes shall be arbitrable only as hereinafter in this Section set forth […]
C. Individual Disputes between Performer and Producer
Subject to the provisions of subsections A. and B. above **only the following disputes between a performer and Producer are arbitrable**:
**(1) As to a day performer**, stunt performer, stunt coordinator, airplane pilot, singer, dancer employed on a theatrical motion picture, puppeteer, body double or either a freelance performer or a multiple-picture performer whose guaranteed compensation is less than $50,000 per picture, the issue of whether a contract was entered into and any dispute involving the interpretation, performance, non-performance or an alleged breach of a term or condition of the performer's contract, **including claims for compensation at scale or overscale,** and **all disputes arising under the applicable terms of the collective bargaining agreement relating to such performer;**
(Espinosa Decl., ¶9, Exh. D, p. 47, *emphasis added*).

### C.  The Underlying Grievance Is Covered by the Collective Bargaining Agreement

The Low Budget Agreement and the CBA set forth the minimum wage scales and working conditions for all performers employed in television motion pictures.  The topics covered by the Low Budget Agreement and CBA and therefore "arising under" these Agreements include, but are not limited to, compensation for performers, contributions to the Screen Actors Guild Pension and Health Plans ("P & H") by Producers on behalf of performers, and late payment liquated damages for failure to pay outstanding amounts.  Both Agreements are applied as necessary, and Respondent agreed to be bound by the terms of both Agreements when it signed the Low Budget Agreement and Theatrical Adherence Letter.

### 1.    Respondent Did Not Pay Performers Agreed Upon Compensation

Respondent agreed to arbitrate over compensation as evidenced by the plain language in the CBA arbitration provision cited above. Specifically, in this case, Respondent violated terms of Sections 5 and 5.2 by not paying performers residual compensation, and therefore Arbitrator Rappaport found, "Producer as released the Picture on videocassette/DVD without reporting and paying residuals and making pension and health contributions required by the CBA." (Espinosa Decl., ¶ 19, Exh. H, p. 2, ¶ 7).

### 2.    Respondent Did Not Pay Agreed Upon Pension and Health Contributions

Respondent also did not pay performers their due Pension and Health contributions as required by Section 11(B) of the Low Budget Agreement (Espinosa Decl., ¶¶ 12-13, Exh. A, p. 6) and Section 34.A of the CBA. (Espinosa Decl., ¶¶ 8, 12, Exh. D , pp. 86-94).

Respondent failed to both pay compensation and pension and health contributions.  The Arbitrator found these failures a breach of Respondent's duties,

- 10 -

"Broken the Movie [sic] Picture, LLC is hereby ordered to pay [. . .] pension and health contributions" (Espinosa Decl.,¶ 20; Exh. H, p. 2 ¶ 5).

        3.      Respondent Failed to Pay Late Payment Liquidated Damages

        Section 31(B) of the CBA mandates that Respondent will be charged an additional late payment when he or she fails to pay performers due compensation.

> (B) Late Payments
> […] **(2) There shall be a $10 per day performer late payment charge, excluding Saturday, Sunday, and holidays, for late payment applicable to all Schedules from time payment becomes due** (excluding bona fide emergencies of which the Union shall be give prompt notice within the time specified for payment hereunder), for a period not to exceed twenty (20) says, excluding Saturdays, Sundays and holidays, to a maximum $200 per violation.
> […] **In the event payment is not made within said five (5) day period of the entire amount due, further late payment charges in the amount of $2.50 per day retroactive to the date of receipt of notice of non-payment shall be due and shall continue to accrue without limitation until the delinquent payment, together with the late payment charges, is fully paid**. (Espinosa Decl., ¶ 8, Exh D, pp. 84-85, *emphasis added*.)

        Respondent explicitly agreed to arbitrate issues of compensation, contributions to pension and health plans, and late payment liquated damages as evidenced by the arbitration provisions and contractual provisions in the Low Budget Agreement and the CBA that govern these subjects.  The Arbitration Award was awarded in favor of the Union, due to multiple violations, by Respondent, of the collective bargaining agreements.  The Arbitration Award states, "Broken the Movie [sic] Picture, LLC is hereby ordered to pay to Screen Actors Guild, Inc. for ratable distribution to the performers appearing in the Picture residuals, late payment damages (LPLD's"), pension and health contributions ("P&H"), and an estimate of employer-side taxes and payroll house expenses [...]" (Espinosa Decl., ¶20, Exh. H,  p. 2). Therefore, Respondent agreed to arbitrate the underlying grievance and gave the arbitrator the power to make the award given,

fulfilling the requirements for this Court to enforce the arbitration award as set forth in *Sheet Metal Workers' Int'l Ass'n Local No. 359 v. Madison Indus., Inc., of Ariz.*, 84 F.3d 1186, at 1190.

D.   <u>The Present Arbitration Award Should Be Confirmed Because the Arbitrator Found That Producer Breached Its Obligations To Union.</u>

In the current case, the Arbitrator applied to the facts the relevant provisions of the CBA and the Low Budget Agreement, finding that Respondent breached its obligations under said agreements, and awarded monetary and other relief in favor of Union and against Respondent.  (Espinosa Decl., ¶ 20, <u>Exh. H</u>).  As a matter of public policy and in the interest of the stability of labor relations, as well as in accordance with Congress' intent as interpreted by the U.S. Supreme Court, the Low Budget Agreement, the CBA, and the Arbitration Award must be enforced. Accordingly, the Arbitration Award should be confirmed and judgment entered in conformity therewith.  *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, at 564.

E.   <u>Petitioner Union Should Be Awarded Its Attorney's Fees and Costs.</u>

Attorney's fees may be recovered in an action brought under Section 301 of the LMRA (29 U.S.C. §185) where a party without justification refuses to abide by the arbitration award.  *International Union of Petroleum and Industrial Workers v. Western Industrial Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir. 1983); see also *UAW v. United Farm Tools, Inc.*, 762 F.2d 76, 77 (8th Cir. 1985) (unjustified refusal to abide by arbitration award, combined with failure to act to set aside award, is evidence of bad faith sufficient to warrant attorney's fees).

Respondent has not asserted or demonstrated any legal justification for failing to comply with the Arbitration Award.  Instead, Respondent has forced the Union to initiate this action in Federal Court to confirm and enforce the Arbitration Award.  Considering the prevailing rate for attorney's fees, as well as the estimated

8 hours that Union's attorney worked or will have worked in preparing the present motion and supporting documents as well as court appearance time, Union respectfully requests that this Court award attorney's fees in the amount of $2,400.00 and costs in the amount of $400.00 as set forth in the accompanying declaration.  (Espinosa Decl., ¶¶ 26-33.)

## III.   **CONCLUSION**

For the foregoing reasons, petitioner Screen Actors Guild-American Federation of Television and Radio Artists requests that the Court confirm the Arbitration Award, enter judgment in conformity therewith, and award attorney's fees to SAG-AFTRA in the amount of $2,400.00 and costs in the amount of $400.00.

Dated: December 7, 2015                    Respectfully Submitted,

SCREEN ACTORS GUILD-
AMERICAN FEDERATION OF
TELEVISION AND RADIO ARTISTS


By:                 /s/
                     Jessica Espinosa
                     Attorney for Petitioner

MEMO OF POINTS AUTHORITIES IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRATION AWARD AND FOR
ENTRY OF JUDGMENT

### DECLARATION OF JESSICA ESPINOSA

I, JESSICA ESPINOSA declare as follows:

1.     I am an attorney licensed to practice law in the State of California and admitted to this Court. I am the attorney of record for petitioner Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA" or "Union"), as successor-in-interest to Screen Actors Guild, Inc. ("SAG"), in this matter.

2.     This Declaration is submitted in support of Union's motion for order confirming arbitration award and for entry of judgment in conformity therewith.  I prepared the foregoing motion.  The allegations contained in the motion are true to the best of my knowledge, except those that are stated on information and belief. As to those matters, I believe them to be true.

3.     SAG-AFTRA is the successor-in-interest to SAG and is a union that represents approximately 160,000 media artists who work in motion pictures, television, radio, the internet, and other media formats.

4.     Respondent BROKEN THE MOTION PICTURE, LLC ("Respondent" or "Producer") executed a Screen Actors Guild Letter Agreement for Low-Budget Theatrical Pictures ("Low-Budget Agreement") dated July 6, 2005. A true and correct copy of the executed Low Budget Agreement is attached hereto as Exhibit A.

5.     Respondent also executed a Screen Actors Guild Theatrical Adherence Letter ("Adherence Letter") dated July 6, 2005, agreeing to be bound by the Screen Actors Guild Codified Basic Agreement of 1995 for Independent Producers, the 1998 Memorandum of Agreement, the 2001 Memorandum of Agreement, the 2001 Screen Actors Guild Extension Agreement (collectively "CBA"). A true and correct copy of the executed Adherence Letter is attached hereto as Exhibit B.

6.     Producer also executed a Security Agreement on October 20, 2005.

A true and correct copy of the Security Agreement is attached hereto as <u>Exhibit C</u>.

7.     During the term of the CBA, Respondent produced the motion picture entitled, "*Broken*" a/k/a "*Mel's Diner*" ("the Picture").

8.     Among other things, the Low Budget Agreement, the Adherence Letter, and Security Agreement bind Respondent to the terms and conditions of a collective bargaining: the Screen Actors Guild Codified Basic Agreement of 1995 for Independent Producers, the 1998 Memorandum of Agreement, the 2001 Memorandum of Agreement, the 2001 Screen Actors Guild Extension Agreement and the 2005 Memorandum of Agreement (collectively "CBA")  A true and correct copy of the relevant portions of the CBA are attached hereto as <u>Exhibit D</u>. [1]

9.     Pursuant to the terms of the Low Budget Agreement and the CBA, Respondent produced the Picture using Union actors or other performers covered by said agreements (collectively "Performers").

10.    Respondent distributed the Picture in Videocassette/DVD.

11.    As a result, Respondent became obligated to pay Performers additional residual compensation as outlined in Sections 5 and 5.2 of the CBA.

12.    Additionally, pension and health contributions ("P & H") became due and payable on behalf of Performers pursuant to Section 11(B) of the Low Budget Agreement and Section 34 of the CBA.

13.    Respondent failed or refused to pay residual payments due to Performers and corresponding P & H contributions on performer's behalf.

14.    Because Respondent failed or refused to pay the salary upgrades due to Performers, late payment liquidated damages ("LPLDs") also became due pursuant to Section 31.B of the CBA.

15.    On or about July 17, 2008, pursuant to Section 9.E, of the CBA, Union served a statement of Claim and Request for Conciliation on Respondent for

---

[1] Because the CBA is 617 pages in length, only the Table of Contents and relevant portions of the document have been attached.

Delinquent Residuals and Reporting. A true and correct copy of Claim and Request for Conciliation is attached hereto as <u>Exhibit E</u>.

16.    On or about July 17, 2009, pursuant to the arbitration provisions, Sections 9.E(3) and 42 of the CBA, Union served a Statement of Claim and Demand for Arbitration ("Demand") on Respondent for failure to pay residuals compensation, pension and health contributions, and LPLDs due.  A true and correct copy of the Statement of Claim and Demand for Arbitration is attached hereto as <u>Exhibit F</u>.

17.    Said statements of claim and demands for arbitration were served in accordance with the notice provisions of the CBA, Sections 9.E(3) and 42.

18.    Union unilaterally selected arbitrator Michael D. Rappaport to preside over the arbitration pursuant to Section 9 of the CBA after Union received no response from Respondent.  A true and correct copy of the Notice of Arbitration is hereto attached as <u>Exhibit G</u>.

19.    An arbitration hearing was held on December 8, 2011.  Respondent did not appear at the hearing.  Consequently, Arbitrator Michael D. Rappaport issued an arbitration award ("Arbitration Award") on December 8, 2011, in favor of Union and against Respondent.  A true and correct copy of the Arbitration Award is attached hereto as <u>Exhibit H</u>.

20.    The Arbitration Award provides the following relief:

"Broken the Movie [sic] Picture, LLC is hereby ordered to pay to Screen Actors Guild, Inc. for ratable distribution to the performers appearing in the Picture residuals, late payment liquidated damages ("LPLD's"), pension and health contributions ("P&H"), and an estimate of employer-side taxes and payroll house expenses as follows: Residuals: $47,262.04; P&H: $6,467.96; LPLD's: $22, 157.48; Taxes/Expenses (17.95%): $12,460.80; **Total: $75,887.48**."

21.     The monetary portion of the Arbitration Award totals: **$75, 887.48** .

22.     Despite Union's demand, Respondent has failed and continues to fail to pay Union the total amount of $75, 887.48 required by the Arbitration Award, and to otherwise comply with the Arbitration Award.

23.     Union has received no response from Respondent.

24.     Subsequently on November 25, 2015, Union attempted to contact Producer via telephone. The telephone number was out of service and another business was operating from that number.

25.     Union sent a meet and confer letter on November 30, 2015 stating that Union would proceed to confirm the Arbitration Award as a judgment. A true and correct copy of the meet and confer letter is attached hereto as Exhibit I.

26.     In addition to confirmation of the Arbitration Award and entry of judgment in conformity therewith, Union seeks attorney's fees and costs.

27.     I have practiced law since 2011 in California, where I was admitted to the Bar in January of 2011.  I am also admitted to practice in the U.S. District Court for the Central District of California.

28.     I have practiced in-house with Union since May 2013.  In that capacity, I represent Union and its members in a wide variety of arbitrations and litigation arising under Union's collective bargaining agreements.

29.     I have reviewed my activities on behalf of Union in this matter.  In calculating the hours set forth herein, I have considered my time in preparing the present declaration, and related notice of motion and motion, memorandum of points and authorities, proposed judgment, notice of interested parties, as well as correspondence and attempted communications with Respondent and my estimated travel and court time.

30.     I have calculated the reasonable market value of my services by taking the prevailing hourly rate of private attorneys whose practices focus on labor relations law in the entertainment industry and assessing my rate within the

lower to mid-range of that scale.  Based upon those rates, a reasonable rate for an attorney of my background and experience is $300.00 per hour.

31.     Fees awarded in this action will not inure to me personally, but will be paid to Union, a non-profit corporation and certified labor organization.

32.     The compensation for which Union is entitled for my services is $2,400.00, which was computed as follows: 8 hours at $300.00 per hour.

33.     The costs incurred in this action total $400.00 in filing costs.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Los Angeles, California, December 7, 2015.

_____ /s/_____

Jessica Espinosa

SUPPORTING DECLARATION